UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY AIMONE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INVESTORFLOW LLC, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-00118-DMR<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER**<br><br>Re: Dkt. No. 20 |

Defendants Investorflow, Inc. and Investorflow, LLC move pursuant to 28 U.S.C. § 1404(a) to transfer this employment discrimination action to the United States District Court, Southern District of New York, seeking to enforce a forum selection clause. [Docket No. 20.] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion to transfer is granted.

**I.　　BACKGROUND[1]**

Plaintiff Randy Aimone was hired by Cloud Theory Solutions, Inc. ("Cloud Theory") in February 2022 as a Marketing Automation Manager. [Docket Nos. 20-3 (Heidorn Decl. Mar. 27, 2023) ¶ 3; 23-2 (Aimone Decl. Apr. 7, 2023) ¶ 2.] Cloud Theory is a Delaware corporation with its "headquarters and human resources functions" in New York. Heidorn Decl. ¶ 2. The complaint alleges that Aimone "is not a resident of the State of California" but does not allege his citizenship. *See* Compl. ¶ 12. Defendants contend that Aimone worked remotely from his residence in Ohio throughout his employment.[2] Heidorn Decl. ¶ 13.

On February 15, 2022, Aimone and Cloud Theory executed a five-page "letter agreement"

---

[1] Defendants make objections to Aimone's evidence in their reply. *See* Reply 8-9. The objections are denied as moot, as the court does not rely on the challenged evidence in deciding this motion.

[2] Aimone states in his opposition that he is a resident of Ohio. Opp'n 4.

that purportedly governed the terms and conditions of Aimone's employment. Heidorn Decl. ¶ 3, Ex. A (employment agreement). The employment agreement provided that Aimone's employment would commence on February 22, 2022. It contains a forum selection clause that designates the state and federal courts in the county and state of New York:

> The parties (a) hereby irrevocably and unconditionally submit to the jurisdiction of the state and federal courts located in the County of New York, State of New York, United States of America, for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement ("Covered Matters"), (b) agree not to commence any suit, action or other proceeding arising out of or based upon any Covered Matters except in the state courts or federal courts located in the County of New York, State of New York, and (c) hereby waive, and agree not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, any claim that it is not subject personally to the jurisdiction of the above-named courts, . . . that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter of any Covered Matter may not be enforced in or by such court.

Agreement ¶ 10. It also contains an "Advice of Counsel" provision in all caps, as follows:

> YOU REPRESENT AND WARRANT TO THE COMPANY THAT YOU HAVE HAD A FULL OPPORTUNITY TO SEEK LEGAL ADVICE AND REPRESENTATION BY AN INDEPENDENT COUNSEL OF YOUR OWN CHOOSING IN CONNECTION WITH THIS AGREEMENT AND HAVE EITHER RECEIVED SUCH ADVICE OR IN YOUR BUSINESS JUDGMENT HAVE DECIDED NOT TO SEEK SUCH ADVICE.

*Id*. at ¶ 11.

During his employment Aimone reported to "decision makers and/or managing agents located in Austin, Texas." Aimone Decl. ¶ 2. In April 2022, Cloud Theory merged with Investorflow, LLC and created a third entity named Investorflow, Inc. Heidorn Decl. ¶ 2; Aimone Decl. ¶ 3. Cloud Theory is a wholly-owned subsidiary of Investorflow, Inc. Heidorn Decl. ¶ 2. Aimone states that "by early Summer 2022," his paystubs listed "Investorflow Inc." with a Menlo Park, California address as his employer. He later received tax documents listing Investorflow, Inc. as his employer. Aimone Decl. ¶ 6, Exs. 3-5.

Defendants' headquarters are in Menlo Park, California. Defendants contend that during Aimone's employment, "a total of three employees resided in California," none of whom supervised Aimone or "made any decisions pertaining to [Aimone's] employment." Heidorn

1   Decl. ¶ 8. According to Defendants, "[a]ll personnel decisions relating to" Aimone were made in
2   New York and Defendants maintain all personnel records, including Aimone's, in New York. *Id.*
3   at ¶¶ 10, 11.
4         Aimone alleges that Defendants terminated him on June 30, 2022 after he made complaints
5   of unlawful conduct and requested accommodations for his disability. *See* Compl. ¶¶ 2, 30-31.
6   He filed suit against Defendants on January 10, 2023, asserting eight claims under California law:
7   (1) disability discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (2)
8   harassment/hostile work environment in violation of FEHA; (3) failure to investigate and prevent
9   discrimination and harassment/hostile work environment in violation of FEHA; (4) failure to
10  engage in the interactive process in violation of FEHA; (5) retaliation in violation of FEHA and
11  California Labor Code section 1102.5; (6) wrongful termination in violation of public policy; (7)
12  violation of California Labor Code section 1102.5; and (8) intentional infliction of emotional
13  distress.
14        Defendants now move to transfer the case to the Southern District of New York in
15  accordance with the forum selection clause in the employment agreement.

## II. LEGAL STANDARD

17        28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the
18  interest of justice, a district court may transfer any civil action to any other district or division
19  where it might have been brought or to any district or division to which all parties have
20  consented." Section 1404(a) "does not condition transfer on the initial forum's being 'wrong' . . .
21  [a]nd it permits transfer to any district where venue is also proper . . . or to any other district to
22  which the parties have agreed by contract or stipulation." *Atl. Marine Const. Co. v. U.S. Dist.*
23  *Court*, 571 U.S. 49, 59 (2013). Parties may enforce forum selection clauses through motions to
24  transfer under § 1404(a). *Id*. at 60.
25        When determining whether a transfer is proper, courts employ a two-step analysis. *Park v.*
26  *Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013). First, courts consider
27  the threshold question of whether the case could have been brought in the forum to which the
28  moving party seeks to transfer the case. *See id.*; *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409,

414 (9th Cir. 1985). "An action could have been brought in any court that has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and where venue would have been proper." *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1040 (N.D. Cal. 2020). Once the party seeking transfer has made this showing, district courts have discretion to consider motions to change venue based on an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotations and citations omitted).

"In the typical case not involving a forum selection clause, a district court considering a [Section] 1404(a) motion . . . weigh[s] the relevant factors and decide[s] whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine*, 571 U.S. at 62-63 (quoting Section 1404(a)). However, "the calculus changes . . . when the parties' contract contains a valid forum selection clause." *Id.* at 63. Such a clause "represents the parties' agreement as to the most proper forum" and its enforcement "protects their legitimate expectations and furthers vital interests of the justice system." *Id.* (quotation marks and citation omitted). For that reason, "a valid forum selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (cleaned up). "Thus, if there is a valid forum selection clause, then the Plaintiff bears the burden of showing exceptional circumstances unrelated to the convenience of the parties that make transfer inappropriate." *T & M Solar & Air Conditioning v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 868 (N.D. Cal. 2015) (citing *Atl. Marine*, 571 U.S. at 63). "The party seeking to avoid the forum selection clause bears 'a heavy burden of proof.'" *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (quoting *Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 17 (1972)).

The presence of a valid forum selection clause requires district courts to adjust their usual Section 1404(a) analysis in three ways:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . .
>
> Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments

4

> about the parties' private interests. When parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . . As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.
>
> Third, when a party bound by a forum selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules . . .

*Atl. Marine*, 571 U.S. at 63-64.

The Supreme Court recognized that its analysis in *Atlantic Marine* "presupposes a contractually valid forum selection clause." *Id*. at 62 n.5.

## III.   DISCUSSION

The parties' dispute centers on whether the forum selection clause in Aimone's employment agreement is valid and enforceable.

At the first step of the two-part test applicable to motions to transfer venue, Defendants contend, and Aimone does not dispute, that this case could have been brought in the Southern District of New York, which Defendants contend is the location of their principal place of business. *See* Heidorn Decl. ¶ 9; *Park*, 964 F. Supp. 2d at 1093 (the court first considers "the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case"). Accordingly, the court will consider the section 1404(a) analysis, including whether the forum selection clause at issue is valid and enforceable.

"[F]orum selection clauses are presumptively valid" unless the challenging party "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting *Bremen*, 407 U.S. at 15). The Supreme Court has recognized three grounds for refusing to enforce a forum selection clause: "first, if the inclusion of the clause in the agreement was the product of fraud or overreaching; second, if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and third, 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'"

5

*Richards*, 135 F.3d at 1294 (quoting *Bremen*, 407 U.S. at 12-13, 15, 18). Federal law governs enforceability of a contractual forum selection clause in a diversity case. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).

Aimone fails to address the foregoing authority, does not attempt to apply the *Bremen* grounds for not enforcing a forum selection clause, and ignores the governing standard under *Atlantic Marine*, which states that it is his "burden of establishing that transfer to the forum for which the parties bargained is unwarranted," *Atlantic Marine*, 571 U.S. at 63. Instead, Aimone exclusively cites cases that pre-date *Atlantic Marine*. *See* Opp'n 3-4.

Nonetheless, Aimone disputes the enforceability of the forum selection clause on several grounds. First, he argues that the court should not enforce the forum selection clause because it was a term in his agreement with Cloud Theory, which was not his employer at the time of his termination and is not a named Defendant in this action. Opp'n 4, 7 (the clause "was a venue term with respect to an entity that was not Plaintiff's employer at the time of his termination"). In other words, he argues that Defendants cannot enforce the forum selection clause because they were not parties to the employment agreement.

"[T]he general rule is that a forum-selection clause may be enforced only by and against the parties to the underlying contract" because "[o]rdinarily, a provision in a contract 'may not be invoked by one who is not a party to the agreement.'" *Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp.*, No. C 14-3073 PJH, 2014 WL 12691050, at *4 (N.D. Cal. Oct. 31, 2014) (quoting *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993)). However, the Ninth Circuit has stated that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Manetti-Farrow*, 858 F.2d at 514 n.5. In *Manetti-Farrow*, non-signatory defendants sought to enforce a forum selection clause against a signatory plaintiff. *Id*. The court found that a forum selection clause applied to all of the defendants, including officers of the signatory corporation sued in their individual capacity and three corporate defendants, even though only one of the corporate defendants had signed the agreement containing the clause. The court held that where "the alleged conduct of the non-parties is so closely related to the contractual relationship . . . the forum selection clause applies to

all defendants." *Id.* In *Holland Am. Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 456 (9th Cir. 2007), the court cited *Manetti-Farrow* in concluding that a forum selection clause was binding upon non-parties "because any transactions between those entities and [the plaintiff] took place as part of the larger contractual relationship" between plaintiff and the signatory defendant. *See id.* ("Just as the disputed conduct in *Manetti-Farrow* arose out of the contract with Gucci Parfums, the alleged conduct of BVNA and BV Canada is tied to Holland America's contract with Bureau Veritas."). *See also TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) ("It is not unreasonable or unjust to enforce the [forum selection] clause even though some of [the individual defendants] did not sign the agreement.").

Aimone does not address *Manetti-Farrow* or *Holland America* and the court need not reach the issue of whether they apply, because the employment agreement provides that it "shall inure to the benefit of, and may be enforced by the successors and assigns of, [Cloud Theory]." Agreement ¶ 9. Therefore, as "a matter of contract interpretation," Defendants may enforce the forum selection clause. *See Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 820-21 (N.D. Cal. 2015) (holding that non-signatory plaintiff could enforce forum selection clause based on its acquisition of a company that was a signatory to an agreement that contained forum selection clause and provision that the agreement "would inure to the benefit of 'the parties, and their respective successors, successors in title, and assigns'"). It is therefore appropriate to enforce the forum selection clause in the employment agreement.

Next, Aimone argues that venue is proper in this court because "Investorflow is a California business" since it is headquartered in California and has its "nerve center" here. Opp'n 4-5. Relatedly, Aimone argues that "private interests" weigh in favor of denying Defendants' motion to transfer, including his choice of forum, convenience of the parties and key witnesses, and accessibility and availability of evidence, among other factors. *Id*. at 10-12. These arguments miss the mark because they ignore the governing legal standards. Section 1404(a) "does not condition transfer on the initial forum's being 'wrong' . . . [a]nd it permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atl. Marine*, 571 U.S. at 59. Where there is a valid forum selection clause,

Aimone's choice of forum "merits no weight" and the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 63-64. This is because "whatever inconvenience the parties would suffer by being forced to litigate in the contractual forum as they agreed to do was clearly foreseeable at the time of contracting." *Id.* at 64 (cleaned up).

Finally, Aimone argues that the forum selection clause is procedurally and substantively unconscionable. Opp'n 6-7. According to Aimone, he "was required to sign a take-it-or-leave-it forum selection clause" and the employment agreement itself is silent as to his employment rights or protections. *Id.* He only cites California law in support of his unconscionability argument, but federal law governs enforceability of a contractual forum selection clause in a diversity case. *Manetti-Farrow*, 858 F.2d at 513. As discussed above, *Bremen* sets out three grounds for not enforcing a forum selection clause. Under the first one, "[t]o establish the invalidity of a forum selection clause on the basis of fraud or overreaching, the party resisting enforcement must "show that 'the *inclusion of that clause in the contract* was the product of fraud or coercion.'" *Petersen v. Boeing Co.*, 715 F.3d 276, 282 (9th Cir. 2013) (emphasis in original) (quoting *Richards*, 135 F.3d at 1297). To the extent Aimone contends that the forum selection clause is unenforceable due to fraud or overreaching, he has not met his burden. He offers no argument on this point, and his declaration is silent as to the circumstances under which he received and signed the employment agreement. Nothing in the record indicates that Aimone was not permitted to consult with an attorney about the agreement; to the contrary, the agreement contains a provision that he "had a full opportunity to seek legal advice and representation by an independent counsel in connection with" the agreement. Nor is there evidence that he was required to sign the employment agreement without modification, that he attempted to modify the agreement and was refused, or that his employment offer was conditioned on his acceptance of the forum selection clause in the agreement. *Compare Petersen*, 715 F.3d at 282-83 (holding that plaintiff had shown fraud or coercion where his initial contract contained no Saudi forum selection clause but he was required to sign a new contract containing such a clause upon his arrival in Saudi Arabia, employer did not permit him time to read the agreement, and employer told him that failure to sign

8

would result in his being forced to return immediately to the US at his own expense) *with Yiren Huang v. FutureWei Techs., Inc.*, No. 18-CV-00534-BLF, 2018 WL 10593813, at *5-6 (N.D. Cal. Sept. 24, 2018) (holding that plaintiffs had not shown fraud or coercion where employment agreement expressly provided that it was a "final and integrated agreement," individual was given adequate notice of the agreement, had adequate opportunity to seek advice from an attorney before signing, and had not shown that he would have been terminated if he did not sign the agreement). Accordingly, Aimone has failed to establish that inclusion of the forum selection clause in the employment agreement was the product of fraud or coercion.

The remaining two grounds identified in *Bremen* for challenging a forum selection clause as unenforceable are (1) if the plaintiff "would effectively be deprived of his day in court were the clause enforced" and (2) where enforcement of the forum selection clause "would contravene a strong public policy of" this forum. *See Richards*, 135 F.3d at 1294 (*quoting Bremen*). Aimone does not address either of them.

Given the presence of a valid and enforceable forum selection clause in Aimone's employment agreement, Aimone can defeat transfer pursuant to the forum selection clause only by demonstrating that the public interest factors under section 1404(a) makes transfer inappropriate. *Atl. Marine*, 571 U.S. at 64. As public interest "factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id*. "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)).

Here, Aimone contends that California has an interest in this litigation because it involves a California business, events that transpired in California, and California law. Opp'n 9. "The local interest factor has the . . . aim of determining if the forum in which the lawsuit was filed has its own identifiable interest in the litigation which can justify proceeding in spite of these burdens [on local courts and juries]." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1232 (9th Cir. 2011). "[T]he local interest factor weighs in favor of a California forum where a California

9

plaintiff is suing a California defendant over conduct that took place in the state." *Id*. at 1233. In this case, the local interest factor does not support Aimone because he is not a "California plaintiff"; he lived and worked in Ohio throughout his employment, and the parties dispute whether the relevant conduct took place in California or in New York. *See* Aimone Decl. ¶¶ 7-8; Heidorn Decl. ¶¶ 11-13.

Aimone also argues that this district is better suited to hear the case because his claims arise exclusively under California law. Opp'n 9-10. While this court may be more familiar with the law governing Aimone's claims, there is nothing to indicate that the Southern District of New York will be unable to competently apply California law as needed, a task which federal courts are routinely required to perform.

In sum, the court concludes that Aimone has not demonstrated the existence of exceptional circumstances or public interest factors that preclude enforcement of the forum selection clause. Accordingly, Defendants' motion to transfer is granted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to transfer is granted. The clerk shall transfer this action to the United States District Court for the Southern District of New York.

**IT IS SO ORDERED.**

Dated: May 15, 2023



Donna M. Ryu
Chief Magistrate Judge